UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT LOTT | CIVIL ACTION |
| VERSUS | NO. 06-2132 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "C" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Robert Lott, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 4232, 1381a.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a memorandum of facts and law. Record Doc. No. 17. Defendant filed a timely opposition memorandum. Record Doc. No. 18.

## I. PROCEDURAL HISTORY

Lott filed applications for SSI and DIB in October 2002, alleging disability since March 15, 2002, based on a seizure disorder, hepatitis, diabetes, psychosis, mental retardation, left ankle fracture and alcohol abuse. (Tr. 58-61, 69, 91, 179-80). After Lott's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 18, 2004. The ALJ denied plaintiff's application on July 29, 2004. (Tr. 33-38). After the Appeals Council denied review on February 6, 2006 (Tr. 9-11), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

## II. STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred in failing to find that plaintiff's impairments are severe.

B.  The ALJ erred in failing to find that plaintiff's IQ scores meet Listing 12.05(C) for mental retardation.

## III. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  Plaintiff does not have any impairment or combination of impairments are considered severe.

2

      2.     Lott was not under a disability as defined in the Act at any time through the date of this decision.

(Tr. 38).

## II.   ANALYSIS

### A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id.

---

[1] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

§§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner

---

[2]The five-step analysis requires consideration of the following:
    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).
    Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).
    Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).
    Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
    Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.     Factual Background

Plaintiff testified that he last worked as a helper or manual laborer in a brickyard for about one and one-half years.  He said that he was laid off in 1998 after he got sick and kept vomiting.  He stated that he lives in one of his mother's houses and that his mother and brother help him financially.  (Tr. 185-86).  He testified that he has a driver's license but no car and that he either walks or gets a ride with someone when he needs to go somewhere.  (Tr. 186-87).

Lott stated that he spends most of his time around the house, trying to help his mother and taking care of himself.  He said he takes care of himself by taking his medicine and taking it easy.  He testified that he has diabetes and that he gets hot and dizzy if he does not take his insulin.  He said that he takes his insulin and that his mother checks his blood sugar for him.  Plaintiff said the last time he looked at his blood sugar levels was when he went to the hospital for an appointment about six weeks before the

hearing. (Tr. 187). He testified that he had another appointment to see the doctor and have his blood checked in about two weeks.

Lott stated that failing to take his insulin makes him feel hot, dizzy, weak and "dreary," but that he feels all right as long as he takes the insulin. He testified that he used to have seizures but had not had one for a couple of years. He said he had been given some Dilantin at Lallie Kemp Hospital after a seizure and that the medicine made him feel better. He said he does not take any medication for seizures. (Tr. 188-89).

Plaintiff testified that he completed the ninth grade in school. He said that he was not a good learner but he had not been in special education. He said that he had worked as a painter after he left school.

Lott testified that he has hepatitis C and that it upsets his stomach when he eats certain foods. (Tr. 189). He testified that he does not drink alcohol or use any street drugs. (Tr. 189-90). He stated that he had not had a drink in about four months and had not used any drugs for about a year. He said he goes to AA meetings in Greensburg, Louisiana, and was going to a meeting after the hearing.

Plaintiff testified that he cannot work because he sometimes feels sick and hot from being diabetic and having high blood pressure.

Upon questioning by his attorney, Lott stated that he had last worked at the brickyard in 2002 and that he had been fired from that job. He said he had looked but had been unable to find any other work. (Tr. 190-91).

Plaintiff testified that both of his legs had been broken and he had a pin in one of them. He said that he can stand for about 15 minutes and walk for about one-half block before he gets a pain in his leg. He said he has no problems with lifting. (Tr. 191-92). He stated that he does chores for his mother, such as washing the car, raking leaves and cutting the grass.

Lott stated that he has prescriptions for several drugs, including insulin, Wellbutrin[3] and Diovan,[4] but that he cannot afford to have them filled. (Tr. 192-93). He testified that the only mental health treatment he had received had been to see a psychiatrist to whom he was referred by Vocational Rehabilitation Services a couple of years earlier and that he had recently seen that doctor again. (Tr. 193-94).

---

[3]"Wellbutrin is prescribed to help relieve major depression." PDRhealth, available at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/wel1488.shtml.

[4]"Diovan is one of a new class of blood pressure medications called angiotensin II receptor antagonists. Diovan works by preventing the hormone angiotensin II from narrowing the blood vessels, which tends to raise blood pressure. Diovan may be prescribed alone or with other blood pressure medications, such as diuretics that help the body get rid of excess water." Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/dio1139.shtml.

B.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 34-37). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

C.   Plaintiff's Appeal

1.   *The ALJ did not err in finding that plaintiff's impairment or combination of impairments are not severe.*

The ALJ found at the second step of the sequential evaluation that Lott's impairments or combination of impairments are not severe. Plaintiff argues that the ALJ erred by failing to accept the opinions of Lynn Simon, M.D., a psychiatrist who examined Lott twice (not three times, as plaintiff states) over a span of 14 months. Lott contends that Dr. Simon was a treating physician whose opinions are entitled to more weight than those of Brian Murphy, Ph.D., a consultative psychologist who saw plaintiff only once on March 27, 2003 and on whose opinions the ALJ relied. Plaintiff also notes that he has diabetes, for which he takes daily insulin, and that one consultative examiner, William Barlow, M.D., recommended that he not perform manual labor because of his history of seizures. (Tr. 137). Lott argues that the ALJ failed to take into account the combined nature of these impairments.

First, as the ALJ stated, there is no medical documentation that plaintiff was ever diagnosed with or treated for a seizure disorder or diabetes. The only evidence concerning these illnesses is plaintiff's own testimony, his self-reports to Drs. Simon, Murphy and Barlow, and one written statement from his mother concerning her observations of his seizures.

The mere diagnosis of an impairment is insufficient, in itself, to sustain a finding of disability. Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (Marovich, J.).

In the absence of any medical evidence documenting the existence and severity of Lott's diabetes and history of seizures, these illnesses are not "medically determinable . . . impairment[s] which can be expected to result in death or which ha[ve] lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1508, 416.908. Accordingly, these impairments cannot be considered severe.

Second, as to plaintiff's mental illness, Dr. Simon examined Lott initially on November 22, 2002 at the request of Louisiana Health and Rehabilitation Options.

Based on her examination of plaintiff and on additional information provided by plaintiff's brother, whom she found to be a reliable informant, she diagnosed Lott with psychosis, not otherwise specified, in partial remission; rule out specific developmental disorder; and alcohol induced seizures. She gave Lott a Global Assessment of Functioning Scale ("GAF")[5] score of 32/38,[6] which she described as "moderately/severely impaired." She recommended that Lott obtain the full range of services of a rehabilitation agency, continue on Effexor XR,[7] undertake relapse prevention and continue his present living arrangements next door to his mother. (Tr. 114).

At plaintiff's next visit on January 30, 2004, Dr. Simon diagnosed psychosis, not otherwise specified, in partial remission; ethanol abuse disorder; and rule out specific

---

[5]"The Global Assessment of Functioning Scale ("GAF") ranges from 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for herself)." Irwin v. Shalala, 840 F. Supp. 751, 759 n.5 (D. Ore. 1993) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 12 (3d ed. 1987).

[6]"A GAF of 31-40 indicates '[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work . . ., family relations, [or] judgment.'" Lopez v. Barnhart, No. 03-2035, 2003 WL 22351956, at *2 (10th Cir. Oct. 16, 2003) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed. 2000)).

[7]Effexor "is prescribed for the treatment of depression--that is, a continuing depression that interferes with daily functioning. . . . Effexor XR is also prescribed to relieve abnormal anxiety (generalized anxiety disorder and social anxiety disorder)." PDRhealth, available at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/eff1153.shtml.

developmental disorder. She assigned an improved GAF score of 33/45[8] and recommended that plaintiff start taking Wellbutrin, follow up with a medical doctor for his physical illnesses, continue recommendations for relapse prevention and return to see her in three months. (Tr. 178). There is no record that he ever returned.

On March 12, 2004, Dr. Simon completed a preprinted questionnaire provided by plaintiff's attorney. (Tr. 170-71). The form contains no indication that she examined Lott again. Indeed, Dr. Simon specifically refers to her January 30, 2004 report as the basis for her conclusions on the form.

On that form, Dr. Simon checked off boxes confirming that plaintiff had medically documented, persistent: delusions; auditory hallucinations; catatonic or other grossly disorganized behavior; incoherence, loosening of associations, illogical thinking, or poverty of content of speech; and a flat and inappropriate affect. She checked off that Lott suffered marked restrictions in his activities of daily living and extreme difficulties in maintaining social functioning and concentration, persistence or pace. Dr. Simon indicated that plaintiff had experienced repeated episodes of deterioration or

---

[8]"[A] GAF of 41-50 indicates '[s]erious symptoms . . . OR any serious impairment in social or occupational . . . functioning.'" Lopez, 2003 WL 22351956, at *2 (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed. 2000)).

decompensation,[9] each of extended duration, and could be expected to decompensate with even a minimal increase in mental demands or change in the environment. She noted that plaintiff had demonstrated a substantial loss of ability to understand, carry out or remember simple instructions; make judgments that are commensurate with the functions of unskilled work; and respond appropriately to supervision, co-workers or usual work settings. (Tr. 170-71).

The ALJ found Dr. Simon's conclusions "not persuasive" for two reasons. First, the ALJ held that Dr. Simon was not a treating physician as defined by the Commissioner's regulations because Lott had seen her only twice, on November 22, 2002 and January 30, 2004. (Tr. 36). The regulations define "treating source" as

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based

---

[9]"Decompensation" in psychiatry is "failure of defense mechanisms resulting in progressive personality disintegration." Dorland's Illustrated Medical Dictionary 462 (28th ed. 2000) ("Dorland's").

13

> on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502; see also id. § 20 C.F.R. § 404.1527(d)(2) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

The ALJ accurately observed that Dr. Simon had examined Lott only twice. The ALJ also noted that Dr. Simon's evaluations were completed for the purpose of assisting Lott to qualify for rehabilitation services, an element that the regulations permit the ALJ to consider in determining whether the physician is a treating source. Thus, the ALJ properly could consider Dr. Simon as a nontreating physician whose opinions were not entitled to any greater weight than Dr. Murphy's.

The ALJ found that Dr. Simon's conclusions were not well supported by her narrative notes and were directly contradicted by Dr. Murphy's opinions. Substantial evidence supports the ALJ's findings.

The ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of any physician relative to other

14

experts when the physician's evidence is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence. Newton, 209 F.3d at 455-56 (quotations and citations omitted).

As to Dr. Simon's treatment notes, she observed on November 22, 2002 that plaintiff had rambling, occasionally halting speech; a restricted affect, but with a full range capability; a dysphoric[10] mood; mildly to moderately impaired innate intelligence; and an inability to talk in an abstract, detached fashion. He had no stated goals. She characterized all other aspects of Lott's mental status examination as normal, fair or positive. (Tr. 113-14).

Consistent with the higher GAF score that Dr. Simon assigned on January 30, 2004, her report on that date indicated that Lott had shown some improvement. He reported that he quit drinking in November 2002. He had not had any follow-up psychiatric treatment since his last visit to her. She noted that he performed activities of daily living, took care of his hygiene and personal needs, performed some chores around the house and attended GED classes. She observed that his speech was rhythmical and unhurried, his affect was flat and his mood was euthymic,[11] but subdued. He was

---

[10]"Dysphoria" is disquiet, restlessness or malaise. Dorland's at 556. "Malaise" is a vague feeling of bodily discomfort and fatigue. Id. at 1049.

[11]"Euthymia" is a "state of mental tranquility and well-being; neither depressed nor manic." Dorland's at 629.

15

minimally able to talk abstractly or with detachment. She characterized his innate intelligence as low average and his adaptive intelligence as fair to good. His memory was essentially intact. All other elements of the mental status examination were fair or fair to good. (Tr. 176-77).

Unlike her March 12, 2004 questionnaire responses, Dr. Simon's treatment notes do <u>not</u> mention any delusions; catatonic or other grossly disorganized behavior; repeated or predicted episodes of decompensation; extreme difficulties in maintaining concentration, persistence or pace; or extreme difficulties in maintaining social functioning. Contrary to her March 12, 2004 statement that plaintiff suffered marked restrictions in his activities of daily living, she stated on January 30, 2004, that he engaged in activities of daily living, took care of his personal needs, did some household chores and was attending GED classes.

In addition, the ALJ rejected Dr. Simon's conclusions because they conflicted with Dr. Murphy's opinions. When weighing medical opinions, the ALJ has considerable discretion and is free to reject the opinion of any physician if the evidence supports a contrary conclusion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d), (e); <u>Greenspan</u>, 38 F.3d at 237; <u>Spellman</u>, 1 F.3d at 364; <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990).

The ALJ accurately summarized Dr. Murphy's findings and noted his reasons for giving more weight and credibility to those findings than to Dr. Simon's opinions. Dr.

16

Murphy explained at length his reasons for finding plaintiff's low IQ test scores invalid, his belief that Lott was being dishonest throughout the examination and his conclusions that Lott was neither depressed, psychotic nor mentally retarded and that plaintiff had a GAF score of 65, reflecting "mild symptoms or 'some difficulty' in [social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30, 32 (4th ed. 1994)). Dr. Murphy's opinions are substantial evidence that supports the ALJ's conclusions.

Accordingly, the ALJ did not err by finding that plaintiff's impairments are not severe.

> 2. *The ALJ did not err in failing to find that plaintiff's IQ scores meet Listing 12.05(C) for mental retardation.*

Because the ALJ found at step two of the sequential evaluation that plaintiff has no severe impairments and is not disabled, his inquiry terminated. Leggett, 67 F.3d at 564. He was not required to proceed to step three to determine whether plaintiff's nonsevere impairments meet one of the Commissioner's listings.

## CONCLUSION

Substantial evidence in the record supports the ALJ's finding at the second step that plaintiff has no severe impairments. Therefore, the ALJ appropriately did not reach the third-step question whether Lott's impairments satisfy one of the listings.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   9th   day of November, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE